SEYFARTH SHAW LLP
Gerald L. Maatman, Jr. (*pro hac vice application forthcoming*)
gmaatman@seyfarth.com
Christina Janice (*pro hac vice application forthcoming*)
cjanice@seyfarth.com
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5882
Facsimile: (312) 460-7882

SEYFARTH SHAW LLP
Laura J. Maechtlen (SBN 224923)
lmaechtlen@seyfarth.com
Ari Hersher (State Bar No. 260321)
ahersher@seyfarth.com
Nicholas R. Clements (SBN 267314)
nclements@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
THE TALBOTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO LOPEZ; HEATHER VOTAW; individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE TALBOTS, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT THE TALBOTS, INC.'S NOTICE OF REMOVAL**<br><br>[Alameda County Superior Court Case No. RG15785672]<br><br>[*FILED CONCURRENTLY WITH THE DECLARATION OF HEATHER MALKY; DECLARATION OF ARI HERSHER; CIVIL CASE COVER SHEET; NOTICE OF RELATED CASES; AND DISCLOSURE STATEMENT*]<br><br>Complaint Filed:   September 16, 2015<br>Complaint Served:   October 6, 2015 |

DEFENDANT TALBOTS NOTICE OF REMOVAL

22130252v.1

1  TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
2  CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

3      **PLEASE TAKE NOTICE** that Defendant The Talbots, Inc. ("Defendant" or "Talbots") hereby
4  removes the above-captioned action from the Superior Court of the State of California, County of
5  Alameda, to the United States District Court for the Northern District of California, asserting original
6  jurisdiction under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and (c),
7  and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453. Defendant states that removal is
8  proper for the following reasons:

## PLEADINGS, PROCESSES, AND ORDERS

10      1.    On September 14, 2015, Plaintiff Ricardo Lopez filed a Class Action Complaint for
11  Damages, Injunctive Relief and Restitution in the Superior Court of California, County of Alameda. A
12  true and correct copy of the Plaintiff's Initial Complaint is attached to the concurrently filed Declaration
13  of Ari Hersher ("Hersher Decl.") as Exhibit ("Ex.") 1. This Initial Complaint was never served on
14  Defendant. (Hersher Decl. ¶ 3-4).

15      2.    On September 16, 2015, Plaintiffs Ricardo Lopez and Heather Votaw ("Plaintiffs") filed
16  a First Amended Class Action Complaint for Damages, Injunctive Relief and Restitution in the Superior
17  Court of California, County of Alameda, again entitled *Ricardo Lopez; Heather Votaw; individually,*
18  *and on behalf of other members of the public similarly situated, Plaintiffs, vs. The Talbots, Inc., an*
19  *unknown business entity; and Does 1 through 100, inclusive, Defendants*, Case Number RG15785672
20  ("Complaint"). (Hersher Decl. ¶ 5, Ex. 2 [hereafter cited to as "Complaint"]).

21      3.    Service of the Summons and Complaint on Defendant was effected on October 6, 2015.
22  (Hersher Decl. ¶ 6, Ex. 3).

23      4.    The Complaint alleges ten causes of action against Defendants. Specifically, Plaintiffs
24  allege violations of California Labor Code sections 510 and 1198 (unpaid overtime), as well as
25  California Labor Code sections 226.7 and 512(a) (meal and rest period violations), 1194, 1197 and
26  1197.1 (unpaid minimum wage), 201 and 202 (unpaid final wages), 204 (unpaid wages during
27  employment), 226 (itemized wage statements), 1174(d) (failure to keep accurate records), and 2802

1  (unreimbursed business expenses). (*See* Complaint *passim*). Plaintiffs also allege violations of Business
2  and Professions Code sections 17200, *et seq.* (unfair competition). (*Id.* at ¶¶ 112-116).

3      5.    The Complaint is plead as a class action and seeks to certify a class of "All current and
4  former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of
5  California at any time during the period from September 14, 2011 to final judgment." (*Id.* at ¶ 14).

6      6.    Attached as Exhibits 3 and 4 are copies of all the remaining pleadings served on Talbots.
7  (Hersher Decl. ¶¶ 6-7, Exs. 3-4). Exhibits 1-4 constitute all pleadings, processes, and orders served on
8  Talbots and filed by Talbots in this action.

## TIMELINESS OF REMOVAL

10      7.    Plaintiffs served the Summons and Complaint on October 6, 2015. This Notice of
11  Removal is timely because it is filed within thirty (30) days of the service of the Summons and
12  Complaint upon Defendant. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe
13  Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (thirty-day removal period begins when defendant is
14  formally served); *see also* Hersher Decl. ¶ 6, Ex. 3.

## FEDERAL JURISDICTION UNDER THE CAFA

16      8.    This Court has original subject-matter jurisdiction over this action under CAFA, codified
17  in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable
18  pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds
19  $5,000,000.00, exclusive of interest and costs, and is a purported class action in which a class member is
20  a citizen of a State different from that of Talbots (28 U.S.C. §§ 1332(d)(2) & (6)), and the number of
21  putative class members is greater than 100. *See* 28 U.S.C. §§ 1332(d)(5)(B).

## THERE IS SUFFICIENT DIVERSITY FOR REMOVAL UNDER CAFA

23      9.    **The CAFA Requires Diversity Amongst The Parties.** CAFA requires that "any
24  member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C.
25  § 1332(d)(2)(A).

26      10.    **Plaintiffs Are Citizens Of California.** For diversity purposes, a person is a "citizen" of
27  the state in which he or she is domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F. 2d 1088, 1090
28  (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer,*

29 F. 3d 514, 520 (10th Cir. 1994). Defendant is informed and believes, and on that basis alleges, that Plaintiffs were at all relevant times, and still are, domiciled in California. Plaintiff Lopez's last known addresses is in San Leandro, California. (*See* Declaration of Heather Malky ("Malky Decl.") at ¶ 3). Plaintiff Votaw's last known address is in Napa, California. (*Id.*). Thus, Plaintiffs are, and at all times since the institution of this action have been, citizens of the State of California.

11. **Talbots Is Not A Citizen Of California.** Pursuant to 28 U.S.C. Section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

12. Talbots is now, and since this action commenced has been, incorporated under the laws of the State of Delaware. (Malky Decl. ¶ 4).

13. A corporation's principal place of business is determined under the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010). Under the "nerve center" test, a party's the principal place of business is the state where its "officers direct, control, and coordinate" the association's activities and where the association maintains its headquarters. (Malky Decl. ¶ 4). Here, Talbots principal place of business is in Hingham, Massachusetts, which is where Talbots corporate headquarters and executive offices are located, and where its high-level officers direct, control, and coordinate its activities. (*Id.*).

14. Therefore, under CAFA, Talbots is not a citizen of the State of California. Rather, Talbots is a citizen of the States of Delaware and Massachusetts.

15. **Doe Defendants' Citizenship Must Be Disregarded.** Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F. 2d 1209, 1213 (9th Cir. 1980) ("[U]known defendants sued as "Does" need not be joined in a removal petition."). Thus, the existence of Doe defendants here does not deprive this Court of jurisdiction.

16. Pursuant to 28 U.S.C. section 1332(c), Plaintiffs and Defendant have diverse citizenship. CAFA diversity is thus satisfied, as at least one Plaintiff is diverse from Defendant.

# THERE ARE SUFFICIENT CLASS MEMBERS FOR REMOVAL UNDER CAFA

17. **CAFA Jurisdiction Requires A Putative Class With At Least 100 Members.**
CAFA requires that the aggregate members of all proposed classes be at least 100 persons. *See* 28 U.S.C. § 1332(d)(5)(B).

18. As noted above, Plaintiffs' putative class is defined as "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from September 14, 2011 to final judgment." (Complaint at ¶ 14.)

19. From September 14, 2011 to October 20, 2015 (i.e. the current claims period), there have been 1,599 employees who fall within the putative class definition. (Malky Decl. at ¶ 6). Thus, the requisite number of at least 100 putative class members is satisfied here.

# PLAINTIFFS' ALLEGATIONS PLACE MORE THAN $5,000,000.00 IN CONTROVERSY

20. **CAFA Requires That The Amount In Controversy Exceed $5,000,000.**
Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.00. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved *in favor of federal jurisdiction*. S. Rep. 109-14, at 42-43 (emphasis added) ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make a plausible claim that the amount in controversy exceeds $5,000,000.00. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014).

22. As Plaintiffs have not alleged their particular damages, reasonable estimates of the alleged amount in controversy are appropriate. As such, Courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint. *See, e.g., See, e.g., Coleman v. Estes Express Lines, Inc.*, 2010 U.S. Dist. LEXIS 79772 at *18-19 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate"); *Muniz v. Pilot Travel Centers LLC.*, Case No. S-07-0325, 2007 WL 1302504, * at 4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%).

23. Moreover, a plaintiff cannot evade federal jurisdiction by alleging that the amount in controversy falls below the jurisdictional minimum. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013); *Rodriguez v. AT&T Mobility Services LLC*, 728 F. 3d 975, 978-82 (9th Cir. 2013).

24. While Talbots denies any liability as to Plaintiffs' claims, the amount placed in controversy here far exceeds $5,000,000.00, as set forth below. For purposes of this Removal Notice, Talbots assumes—without admission—the truth of Plaintiffs' allegations and a finding of ultimate liability on all causes of action (which Talbots disputes). Talbots thus bases its calculations on the Complaint allegations, facts known to Talbots, and the class definition asserted in the Complaint.[1]

25. **Plaintiffs' Claim For Unpaid Overtime Places Millions Of Dollars In Controversy.** In their first claim, Plaintiffs allege that, during the putative class period, "Plaintiffs and the other class members worked in excess of eight (8) hours in a day, and/or forty (40) hours in a week." (Complaint ¶ 54). Plaintiffs' further allege that, during the class period, "Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiffs and the other class members, including failing to properly calculating [sic] the overtime rate." (*Id.*).

---

[1]/ Notably, Defendant's calculations are based on the putative class alleged in the Complaint and in no way indicate that class treatment is appropriate in this case, nor that Plaintiffs have standing to represent such a class, nor that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Talbots expressly reserves the right to challenge Plaintiffs' claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.

26. Plaintiffs define the putative class as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from September 14, 2011 to final judgment." Under this definition, there are 1,599 members of the putative class. (Malky Decl. at ¶ 6).

27. The average hourly rate for putative class members from September 14, 2011 to October 20, 2015 was $12.29 per hour. (Malky Decl. at ¶ 7). Thus, the average overtime rate for the putative class was $18.44 ($12.29 x 1.5). The total number of weeks worked by the putative class during the claims period was 97,384, which is an average of 60.903 weeks worked per putative class member (97,384 workweeks divided by 1,599 putative class members). (*Id.* at ¶¶ 6, 8).

28. Here, Plaintiffs' Complaint alleges a 100% violation rate, across all putative class members. (Complaint ¶ 54). Thus, accepting as true Plaintiffs' allegations as true (i.e. that every putative class member was denied overtime), and conservatively assuming that each putative class member worked only *one* hour of overtime per workweek, the aggregate damages for this claim would be: **$1,795,759.06** (1,599 class members x 1 hour of overtime at $18.44 per hour x 60.903 work weeks).

29. **Plaintiffs' Meal And Rest Break Claims Place Millions Of Dollars In Controversy.** Under California Labor Code section 226.7, if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each day that the meal or rest period is not provided.

30. Here, Plaintiffs' second cause of action alleges that, during the putative class period, Talbots "intentionally and willfully required Plaintiffs and the other class members to work during meal periods and failed to compensate Plaintiffs and the other class members the full meal period premium for work performed during meal periods." (Complaint at ¶ 65). Similarly, Plaintiffs' third cause of action alleges that "during the relevant time period, Defendants willfully required Plaintiffs and other class members to work during rest periods and failed to pay Plaintiffs and the other class members the full rest period premium for work performed during rest periods." (*Id.* at ¶ 74). Again, Plaintiffs allege a 100% violation rate. (*See id.*).

31.   As set forth above, the average hourly rate for putative class members from September 14, 2011 to October 20, 2015 was $12.29 per hour. (Malky Decl. at ¶ 7). The aggregate number of workweeks for the putative class for that same period was approximately 97,384, resulting an average of 60.903 workweeks per class member. (*Id.* at ¶ 8).

32.   Plaintiffs' Complaint alleges that the putative class was "required" to work during meal and rest periods, but were not compensated for that time. (Complaint at ¶¶ 65, 74). Thus, pursuant to California Labor Code 226.7, and conservatively assuming that each putative class member missed only *two* meal periods per workweek, the putative class' meal period damages from September 14, 2011 to October 20, 2015 would be **$2,393,696.18** ($12.29 per hour x 2 violations x 1,599 class members x 60.903 workweeks per putative class member). Likewise, assuming that each putative class member missed only *two* rest periods per workweek, the putative class' rest period damages from September 14, 2011 to October 20, 2015 would be **$2,393,696.18** ($12.29/hour x 1 violation x 1,599 class members x 60.903 workweeks per putative class member). Thus, a conservative estimate of the amount in controversy for Plaintiffs' meal and rest break claims alone is **$4,787,392.36**.

33.   **Plaintiffs' Minimum Wage Claims Place Millions Of Dollars In Controversy.** Plaintiffs' fourth cause of action alleges that Talbots "failed to pay minimum wage to Plaintiffs and the other class members as required, pursuant to California Labor Code sections 1194, 1197, and 1197.1." (Complaint at ¶ 80). Plaintiffs further allege that "Plaintiffs and the other class members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages." (*Id.* at ¶ 82).

34.   Here, the putative class worked an average of 60.903 workweeks during the claims period. (*See* Malky Decl. at ¶¶ 6, 8). The putative class is and was paid weekly, therefore the putative class worked an average of 61 pay periods during the claims period. (Malky Decl. at ¶¶ 9, 10). Accepting as true Plaintiffs' allegation of a 100% violation rate and that "class members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure," and conservatively assuming that each putative class member worked only *one* unpaid hour per workweek, the putative class' minimum wage *penalties* from September 14, 2011 to October 20, 2015 would be **$24,144,900.00** ([1599 class members x $100.00

initial violation x 1 work week] + [1599 class members x $250.00 subsequent violations x 60 work weeks]).

35. Further, Plaintiffs' Complaint states that the putative class is "entitled to recover the unpaid balance of their minimum wage compensation" as well as "liquidated damages in an amount equal to the wages unlawfully unpaid...." (Complaint ¶ 81). Accepting this as true, the putative class would be entitled to recover **$877,851.00** in unpaid minimum wages (1599 class members x 1 hour of minimum wage per workweek x $9.00 per hour minimum wage x 61 workweeks), as well as another **$877,851.00** in liquidated damages. Taken together, Plaintiffs' unpaid minimum wage claims place **$25,900,602.00** in controversy.

36. **Plaintiffs' Waiting Time Claim Places Millions Of Dollars In Controversy.** Plaintiffs' fifth claim alleges that Talbots must pay waiting time penalties under California Labor Code section 203 for failure to pay all wages owed upon termination. (Complaint at ¶¶ 84-89.) Labor Code section 203 authorizes penalties of one day of pay, for each day an employer fails to pay wages owed, up to a maximum of 30 days. Cal. Lab. Code § 203(a).

37. Plaintiffs seek these waiting time penalties on behalf of "class members who are no longer employed by Defendants." (*Id.* at ¶ 86.) From September 14, 2011 through the filing of this Removal Notice, there were approximately 857 putative class members whose employment with Talbots has terminated. (Malky Decl. at ¶ 11). The average hourly rate for these former employees was approximately $11.65. (*Id.* at ¶ 12). Accepting Plaintiffs' allegations as true, a reasonable estimate as to the amount in controversy for section 203 penalties is **$2,396,172.00** [$11.65 per hour x 8 hours per day x 30 days x 857 class members].

38. **Plaintiffs' Wage Statement Claim Places Millions Of Dollars In Controversy.** Plaintiffs further allege that Defendants "intentionally and willfully failed to provide Plaintiffs and the other class members with complete and accurate wage statements." (Complaint ¶ 98). Plaintiffs claim that they, and the putative class, were "injured" as a result of Talbots actions and thus are entitled to "the greater of [the putative class's] actual damages...or an aggregate penalty not exceeding four thousand dollars per employee." (*Id.* at ¶ 101).

39.  Under Labor Code section 226, an employee who receives an incorrect wage statement, and "suffer[s] injury as a result," is entitled to recover $50.00 for the initial pay period in which the violation occurred and $100.00 for each violation in a subsequent pay period, up to a maximum aggregate penalty of $4,000.00.

40.  Here, Plaintiffs filed their Complaint on September 16, 2015. Under Labor Code section, the statutory recovery period is one-year from the date the filing. This Notice of Removal is being filed on November 5, 2015. Thus, as of the filing of this Removal Notice, there are 60 weeks in the recoverable claims period for this cause of action.

41.  Talbots pays its employees weekly, so there are currently 60 pay periods in the claims period. (Malky Decl., ¶ 9). Plaintiffs assert a 100% violation rate, across all 1,599 members of the putative class. As such, the amount placed in controversy by Plaintiffs' wage statement claim is **$6,396,000.00** ($50.00 for the initial pay period violation and $100.00 for 59 subsequent violation, subject to capping at $4,000.00, multiplied by 1,599 putative class members).

42.  **Plaintiffs' Ten Causes Of Action Place More Than $5,000,000.00 In Controversy.** Even without including all of Plaintiffs' claims, and based only on the allegations plead in Plaintiffs' Complaint and Talbots employee data, a reasonable estimate as to the aggregate amount in controversy here is **$41,275,925.42** ($1,795,759.06 in unpaid overtime + $4,787,392.36 in meal and rest break damages + $25,900,602.00 in unpaid minimum wage and penalties + $2,396,172.00 in waiting time penalties + $6,396,000.00 in wage statement penalties). Notably, this amount is somewhat conservative and still far in excess of the jurisdictional threshold of $5,000,000.00.

43.  **Plaintiffs' Attorney Fee Claim Places Additional Millions In Controversy.** Plaintiffs' Complaint also seeks attorneys' fees under their first, second, fourth, ninth, and tenth causes of action. (Complaint at Prayer).

44.  Requests for attorneys' fees may be taken into account in ascertaining the amount in controversy for purposes of removal. *Longmire v. HMS Host U.S., Inc.*, Case No., 12-cv-2203, 2012 WL 5928485, at * 9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over amount in controversy under CAFA.") (citing *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002));

*Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

45. In the class action context, courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F. 3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); see also *In Re Quintas Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25% of the common fund).

46. Thus, even using the moderate benchmark of 25% of the total recovery, Plaintiffs' attorneys' fees in this matter are likely to meet or exceed **$10,318,981.35**.  [$41,275,925.42 x 0.25]. Adding these attorneys' fees to the putative class' potential damages results in an conservative aggregate total of **$51,594,906.77** placed "in controversy" by Plaintiffs' Complaint.[2]

### THIS COURT HAS JURISDICTION OVER THIS MATTER UNDER THE CAFA.

47. The amount Plaintiffs have placed in controversy easily satisfies CAFA's $5,000,000.00 jurisdictional requirement. As Plaintiffs and Defendant are citizens of different states, and there are more than 100 putative class members, removal is proper and this Court can exert jurisdiction under CAFA.

### VENUE

48. Venue lies in this Court pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a). This action originally was brought in the Superior Court of the State of California, County of Alameda.

---

[2]/   Plaintiffs have also asserted claims for failure to reimburse business expenses under California Labor Code section 2802 and for statutory penalties under California Labor Code section 1174(d). These claims are vaguely plead, but unquestionably increase the amount placed in controversy by Plaintiffs.

DEFENDANT TALBOTS NOTICE OF REMOVAL

22130252v.1

## INTRA-DISTRICT ASSIGNMENT

41. Plaintiffs allege their claims arose in the County of Alameda. (Complaint at ¶ 7.) Thus, assignment to the San Francisco or Oakland division of this Court is proper under Civil Local Rule 3-2.

## NOTICE OF REMOVAL

42. Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiffs and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Alameda.

43. This Notice of Removal will be served on counsel for Plaintiffs. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

## PRAYER FOR REMOVAL

WHEREFORE, Talbots prays that this civil action be removed from the Superior Court of the State of California, County of Alameda to the United States District Court for the Northern District of California.

DATED: November 5, 2015

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Ari Hersher
   Laura J. Maechtlen
   Ari Hersher
   Nick C. Clements

Attorneys for Defendant
THE TALBOTS, INC.